IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BARTLEY A. MAHEU, et al.,<br>   *Plaintiffs,*<br><br>        v.<br><br>BANK OF AMERICA, N.A., et al.,<br>   *Defendants.* | Civil Action No.: ELH-12-508 |

**MEMORANDUM OPINION**

Plaintiffs Bartley and Renee Maheu (the "Maheus"), who are self-represented, filed suit against defendants Bank of America, N.A. ("BANA") and the Federal National Mortgage Association ("Fannie Mae").[1] They have asserted a claim for mortgage fraud and seek declaratory and injunctive relief. *See* Complaint (ECF 2).

Defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion," ECF 9), supported by a memorandum ("Memo," ECF 9-1). Plaintiffs oppose the Motion ("Opposition," ECF 17), to which defendants have replied ("Reply," ECF 18). The Motion has been fully briefed and no hearing is necessary to resolve it. *See* Local Rule 105.6.

**Factual Background**[2]

Plaintiffs are the owners of a single family home in Mount Airy, Maryland (the

---

[1] Suit was filed in the Circuit Court for Frederick County on January 3, 2012. Defendants timely removed the case, based on the presence of a federal question, 28 U.S.C. § 1331, and diversity of citizenship, 28 U.S.C. § 1332. The complaint names "Fannie Mae" as a defendant. Presumably, plaintiffs intended to sue the Federal National Mortgage Association, commonly known as "Fannie Mae." Because plaintiffs are proceeding *pro se*, their filings have been "'liberally construed'" and are "'held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citation omitted).

[2] Given the posture of the case, the Court construes the facts alleged in the Complaint in the light most favorable to plaintiffs, as the parties opposing the Motion. *See Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

"Property"). Complaint ¶ 9. On December 22, 2005, the Maheus "entered into a loan repayment and security agreement" with George Mason Mortgage, LLC ("George Mason"). *Id.* ¶ 10. Plaintiffs have appended to their Complaint, as plaintiffs' Exhibit C, a copy of a Deed of Trust executed on that day concerning a loan of $45,000. Defendants have appended the same document to their Motion as defendants' Exhibit B. In addition, defendants have submitted as Exhibit A another Deed of Trust, also dated December 22, 2005, with respect to a loan in the amount of $360,000.[3] Both documents name Mortgage Electronic Registration Systems, Inc. ("MERS") as "nominee" for the lender, George Mason.

Pursuant to an "Assignment of Deed of Trust" executed on September 21, 2011, MERS assigned to BANA the Deed of Trust for the $360,000 loan. That document, appended to the Complaint as plaintiffs' Exhibit A, is central to the suit. The Assignment of Deed of Trust was signed by Swarupa Slee, an "Assistant Secretary" at MERS. *See* plaintiffs' Exh. A. Plaintiffs allege that Slee "is a Robo-Signer"[4] who has improperly "signed dozens of such assignments for other lenders not having any firsthand knowledge of the contents," and that the "Assignment is a fraudulent document...." Complaint ¶ 12.

On November 12, 2011, plaintiffs received a "Notice of Intent to Foreclose," dated November 4, 2011. *Id.* ¶ 13. It named "Fannie Mae as 'Secured Party' and [BANA] as

---

[3] It is unclear why plaintiffs appended the Deed of Trust for the $45,000 loan to their Complaint, but not the Deed of Trust for the $360,000 loan. As an Assignment of Deed of Trust for the $360,000 loan is at issue, as discussed *infra*, it appears that plaintiffs may have inadvertently appended the wrong document as an exhibit to their Complaint. Defendants assert: "Defendants assume that Plaintiffs mistakenly attached the Deed of Trust for the $45,000 loan and that the current lawsuit is actually based upon the $360,000 loan since that is the only loan with which BANA is currently involved." Memo at 2 n.4. In their Opposition, plaintiffs do not dispute this contention.

[4] "[R]obo-signers complete affidavits and other essential foreclosure documents without personal knowledge of the documents' veracity and without verification of the documents' contents." *Beals v. Bank of America, N.A.*, No. 10–5427, 2011 WL 5415174, *3 (D. N.J. Nov. 4, 2011).

2

'Servicer.'" *Id*. Plaintiffs contend that, "following a negotiation and assignment to [BANA]," MERS "further negotiated and/or sold the loan to Fannie Mae...." *Id.* ¶ 14. Yet, plaintiffs complain because "there has been no document recorded among the Land Records of Frederick County, Maryland, evidencing or attesting to the assignment of the loan from [BANA] to Fannie Mae." *Id*. The notice of November 4, 2011, has not been made part of the record. But, plaintiffs appended to their Complaint as Exhibit B a letter from Bartley Maheu to BANA, dated June 6, 2011, in which he acknowledged that on June 3, 2011, he received a "Notice of Intent to Foreclose" from BANA, dated May 2, 2011.

Plaintiffs seem to concede that they are in default, asserting that, "[p]rior to the Default and long before the Notice of Intent to Foreclose," they "made several contacts" with BANA "to inquire of the availability of a loan modification, [and] to advise of [their] worsening financial situation." *Id*. ¶ 15. The Maheus complain that they have "consistently been advised since December, 2010…that [the] loan modification is being worked on without any resolution or response to date." *Id*. In Mr. Maheu's letter to BANA of June 6, 2011, he stated: "[P]lease note that I submitted the Loan Modification documents in the last few months but did not get any modification done so far….[I]nstead of getting a modification as assured, I am shocked to receive the 'Notice of Intent to Foreclose.'" *See* Plaintiffs' Exh. B.

On the basis of the facts alleged above, the Complaint lodges three claims against defendants. In Count I, plaintiffs bring a claim of "Mortgage Fraud" under the Maryland Mortgage Fraud Protection Act, Md. Code. (2010 Repl. Vol.), § 7-401 *et seq*. of the Real Property Article ("R.P."). Complaint at 4. In Count I, they reiterate that Slee is a "Robo-Signer," *id.* ¶ 21; insist that "[i]t is not known and/or designated in the Assignment of Deed of Trust that the same was prepared by or under the supervision of an attorney," and therefore the

3

Assignment of Deed of Trust "was not prepared in compliance with [the Maryland] Rules,"[5] *id.* ¶ 22; and that, as "[t]here is no assignment/endorsement and/or Power of Attorney recorded among the Land Records of Frederick County, Maryland, evidencing Fannie Mae to be a 'Secured 'Party,' Fannie Mae's "status [as] a 'Secured Party' is a nullity." *Id.* ¶ 23. Plaintiffs contend that "the actions on the part of [defendants]…constitutes [sic] an act or acts of 'mortgage fraud' and violate the Maryland Mortgage Fraud Protection Act, Maryland Real Property Code Ann. §§ 7-401(d)(6) and 402." *Id.* ¶ 24.

In Count Two, titled "Declaratory Judgment," *id.* at 5, plaintiffs maintain that the Assignment of Deed of Trust is "a legal nullity," *id.* ¶ 26, and that "Fannie Mae has never been vested with any right, title or interest as a 'Secured Party.'" *Id.* ¶ 27. They claim that BANA has "rebuffed" plaintiffs' efforts for assistance under the Home Affordability Modification Program ("HAMP")[6] and, because of "its failure to consider Plaintiffs for…foreclosure prevention options," BANA has acted "in direct violation of the HAMP Guidelines." *Id.* ¶¶ 31-32. Further, they insist that defendants' actions "violate the doctrine of 'unclean hands'" and that defendants "have failed to engage in any effort to mitigate against losses suffered as a result of Plaintiff's default," and, for those reasons, defendants "should be enjoined from pursuing foreclosure." *Id.* ¶¶ 33-34.

---

[5] Plaintiffs do not specify the particular "Maryland Rules" to which they refer.

[6] As Judge Blake explained in *Allen v. CitiMortgage, Inc.,* CCB-10-2740, 2011 WL 3425665, *4 (D. Md. Aug. 4, 2011) (citation omitted), HAMP is

> a program established by the Treasury Department under the Troubled Asset Relief Program ("TARP") [*See* 12 U.S.C. § 5219]. The purpose of HAMP was to help "3 to 4 million at-risk homeowners—both those who are in default and those who are at imminent risk of default" avoid foreclosure "by reducing monthly payments to sustainable levels." HAMP allows at-risk homeowners to obtain permanent loan modifications, by which their monthly mortgage payments are reduced to not more than 31 % of their monthly income for a period of at least five years.

Further, plaintiffs allege that, because "the Note has been sold/negotiated from [the] *original* lender to Fannie Mae," the Deed of Trust "should be returned as 'Paid.'" *Id.* ¶¶ 36-37 (emphasis in original). They base this argument on the following passage from the deeds of trust: "Upon payment of all sums secured by the Deed of Trust, Lender or Trustee shall release this Deed of Trust without charge to Borrower and mark the Note 'paid' and return to Borrower." Defendants' Exh. B ¶ 20; Defendants' Exh. A ¶ 23. Accordingly, plaintiffs seek a declaratory judgment "[t]hat Fannie Mae/Bank of America is not authorized under the terms of the Deed of Trust to have any right to foreclose on the property" and "[t]hat there is no recorded document anywhere evidencing that Fannie Mae is a secured Party and ha[s] any right to foreclose." Complaint at 7.

Count Three is titled "Injunctive Relief." There, plaintiffs ask "[t]hat the Court issue a mandatory and prohibitory temporary restraining order and preliminary and permanent injunction" enjoining BANA "from naming a substitute trustee…both directly and under any authority from the note holder." *Id*. ¶ 44. Further, they ask that defendants "be enjoined, specifically, from initiating any action of foreclosure and/or from authorizing another or others to initiate a foreclosure proceeding against Plaintiff's [sic] interest in and to the…[P]roperty." *Id*.

Additional facts will be included in the discussion.

**Standard of Review**

Defendants have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637

F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson, supra,* 551 U.S. at 94, and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 n.3 (2007) (citation omitted). To be sure, the plaintiff need not include "detailed factual allegations in order to satisfy" Rule 8(a)(2). *Id.* at 555. But, the rule demands more than bald accusations or mere speculation. *Id*. To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id*. at 556.

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6). *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008). Both *Twombly*, 550 U.S. at 570, and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), make clear that, in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." To establish "facial plausibility," the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient under the Rule. *Twombly*, 550 U.S. at 555. Put another way, a plaintiff must "nudge[] [his] claims across the line from conceivable to plausible." *Id.* at 570; *see Simmons v. United Mortgage and Loan Inv.*, 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

To be sure, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). Moreover, in resolving a Rule 12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 1740 (2010). But, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citation omitted).

As noted, plaintiffs have alleged mortgage fraud. Fed. R. Civ. P. 9(b) provides that a claim of fraud must be pled "with particularity." Of import here, "the 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Wright and Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)), *appeal after remand*, 352 F.3d 908 (4th Cir. 2003). In contrast, "conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive" are permitted. *Harrison*, 176 F.3d at 784. *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."). Notably, "[e]ven where a plaintiff is proceeding *pro se,* the particularity requirements of Rule 9(b) apply." *Coulibaly v. J.P. Morgan Chase Bank, N.A.,* No. DKC 10-3517, 2011 WL 3476994, *19 n.23 (D. Md. Aug. 8, 2011), *reconsideration denied,* 2011 WL 6837656 (D. Md.

Dec. 28, 2011).

Generally, in resolving a motion under Rule 12(b)(6), a court may not consider extrinsic evidence. But, if such evidence is "integral to and explicitly relied on in the complaint," and there is no challenge to authenticity, extrinsic evidence may be considered. *Chesapeake Bay Foundation v. Severstal Sparrows Point,* 794 F. Supp. 2d 602, 611 (D. Md. 2011). A court may also consider documents attached to a motion to dismiss, "so long as they are integral to the complaint and authentic." *Philips*, *supra,* 572 F.3d at 180; *see also E.I. du Pont de Nemours & Co.*, 637 F.3d at 448. Accordingly, I will consider the three exhibits appended to the Complaint, as well as the Deed of Trust for the $360,000 loan, attached to the Motion; they are central to plaintiffs' claims, and their authenticity is not in issue. Nevertheless, this does not convert the Motion to a motion for summary judgment.

## Discussion[7]

*Count One*

Plaintiffs assert that defendants have committed "mortgage fraud," in violation of Maryland law. In particular, plaintiffs rely on R.P. § 7-401(d)(6) and R.P. § 7-402.

R.P. § 7-401(d) defines "mortgage fraud." Under R. P. § 7-401(d)(6), mortgage fraud includes

> any action by a person made with the intent to defraud that involves…(6) Filing or causing to be filed in the land records in the county where a residential real

---

[7] Although defendants do not explicitly move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), they briefly argue that the Maheus "lack standing to bring any claim based on alleged 'robo-signing,'" because "Plaintiffs have not named MERS, nor any other entity with whom Slee is supposedly associated, as a party to the lawsuit." Memo at 6. In my view, plaintiffs' claims are not grounded solely in allegations of "robo-signing." For example, plaintiffs allege defects in the recording of the Assignment of Deed of Trust, as well as failure to comply with HAMP requirements. Therefore, I shall examine the sufficiency of plaintiffs' claims under the standard for Rule 12(b)(6).

property is located, any document relating to a mortgage loan that the person knows to contain a deliberate misstatement, misrepresentation, or omission.

And, R.P. § 7-402 states: "A person may not commit mortgage fraud."

In support of their allegation of mortgage fraud, plaintiffs argue that the Assignment of Deed of Trust was executed by a "Robo-Signer," Complaint ¶ 21; that the Assignment of Deed of Trust was not prepared by or under the supervision of an attorney, *id.* ¶ 22; and that Fannie Mae cannot be a secured party as to the Deed of Trust because there is no recorded assignment or endorsement evincing that Fannie Mae is, in fact, a secured party. *Id.* ¶ 23.

Defendants contend: "[N]one of these allegations are sufficient to allege a cause of action for mortgage fraud." Memo at 7. As to the allegation of "robo-signing," defendants note that "Plaintiffs do not allege that Slee actually 'robo-signed' in this case, but rather that she had done it in other cases." Memo at 8. *See* Complaint ¶¶ 12, 21. And, they note that "Plaintiffs do not allege that Slee is an employee of Defendants nor do they state any reason why Defendants should be held liable for Slee's conduct." Memo at 8.

As to the allegations regarding the execution of the Assignment of Deed of Trust by a non-lawyer, defendants "assume [plaintiffs] are referring to [R.P.] § 3-104(f)(1)," although that provision was not cited in the Complaint. It states:

> No deed, mortgage, or deed of trust may be recorded unless it bears the certification of an attorney at law that the instrument has been prepared by an attorney or under an attorney's supervision, or a certification that the instrument was prepared by one of the parties named in the instrument.

According to defendants, plaintiffs "do not state how their allegations related to this statute concern mortgage fraud." Memo at 9. They also observe that the plain text of R.P. § 3-104(f)(1) refers to deeds of trust, not *assignments* of deeds of trust, *id.* at 10, and add: "Even if that statute did apply to assignments of deeds of trust, the lack of an attorney's certification does

9

not affect the validity of the instrument if accepted by the recording clerk, as was done in this case." *Id.* (citing *Frank v. Storer*, 308 Md. 194,206-07, 517 A.2d 1098, 1104 (1986) ("Where, as here...the clerk does not enforce the [requirement for certification by a Maryland attorney] but accepts the instrument for record, the validity of the instrument is unaffected…."), *overruled on other grounds by Greenpoint Mortg. Funding, Inc. v. Schlossberg*, 390 Md. 211, 888 A.2d 297 (2005)).

With respect to the allegations that there is no recorded document evidencing that Fannie Mae is a "secured party," defendants insist that "there is no requirement under Maryland law that the sale or transfer of a note be recorded." Memo at 11. Defendants also argue that "claiming the *absence* of a document in the land records…by definition, cannot fit into the…description of mortgage fraud" found in R.P. § 7-401(d)(6), which prohibits the *filing* of a fraudulent document relating to a mortgage loan. *Id*. (emphasis added).

In a paragraph of the Opposition captioned "'robo-signing' allegations are inapplicable to Defendants," plaintiffs argue: "MERS has no authority to make an assignment of Deed of Trust under Real Property laws in addition to recording an assignment signed by a person not employed by MERS as its Assistant Secretary." *Id.* at 3. In response to defendants' arguments regarding the execution of the Assignment of Deed of Trust by a non-lawyer, plaintiffs simply state: "Agreed with the Defendants." *Id*. Plaintiffs also "demand[] that Defendants provide to the court as to how Fannie Mae got the custody of the Note, for how much consideration along with all chain of endorsements leading to the alleged claim to prove their claim of being a 'Secured Party.'" *Id*. at 4. They assert, *id*. at 3:

> In order to prove that Fannie Mae is a secured party, Defendants are required to attach a Note along with a chain of endorsements and/or allonge establishing a path as to how they secured the note from George Mason Mortgage,

>LLC[,] the original lender on the Deed of Trust[,] when MERS has no authority to execute any assignment on the deed of trust involving Real property.

In my view, plaintiffs have woefully failed to state a claim for mortgage fraud under R.P. § 7-401(d)(6), R.P. § 7-402, Fed. R. Civ. P. 9(b), and Fed. R. Civ. P. 12(b)(6). They make no allegation that Slee "robo-signed" the documents at issue *in this case*, but merely make the general assertion that Slee "is a Robo-Signer." Complaint ¶ 12. Moreover, they offer no basis for concluding that defendants knew of any "robo-signing," or for attaching liability to defendants for Slee's alleged actions. Indeed, these matters are not addressed in the suit or in the Opposition. *See, e.g., Casey v. Litton Loan Servicing LP*, No. RDB–11–0787, 2012 WL 502886, *6 (D. Md. Feb. 14, 2012) (dismissing mortgage fraud claim because "Plaintiffs' Complaint alleges a wrong—'robo-signing'—but fails to allege any participation by [defendant] in this alleged violation of law."). *See also Stafford v. Mortg. Elec. Registration Sys., Inc.*, No. 12–10798, 2012 WL 1564701, *3 (E.D. Mich. May 2, 2012) (Here, the complaint makes conclusory allegations that the Assignment was signed by a 'known Robo Signer' and thus is fraudulent. Plaintiff makes no specific allegations about the allegedly fraudulent scheme, intent or injury resulting from the fraud. The fraud allegations are insufficiently pled. As such, plaintiff's fraud claims must be dismissed."); *Me Lee v. LNV Corp.*, No. 11–8204, 2012 WL 1203403, *4 (C.D. Cal. Apr. 10, 2012) (emphasis in original) ("Plaintiffs' robo-signing allegation does not plead the required elements of fraud. Other than [an] alleged misrepresentation [of an employee of non-party MERS], Plaintiffs fail to plead that *Defendants* made…misrepresentations. And, Plaintiffs do not to plead knowledge of falsity, intent to defraud, reliance or damages. Moreover, courts have consistently dismissed robo-signing fraud allegations when they are pled in a conclusory fashion without any factual support because this fails to comply with Rule 9(b)."); *In re Mortg. Elec. Registration Sys. (MERS) Litigation*, No. 10–1547, 2012 WL 932625, *3 (D. Ariz. Mar. 20,

11

2012) ("the allegations of robosigning do not state a claim….Plaintiffs have not pled sufficient facts that parties who are represented to have signed the MERS Assignments, 'did not sign the document, and/or did not have the authority to sign the document, and/or did not have knowledge of the representation contained in the document.' These legal conclusions are not supported by sufficient factual pleading."); *Peterson v. GMAC Mortg., LLC*, No. 11–11115, 2011 WL 5075613, *5 (D. Mass. Oct. 25, 2011) ("The bare speculative and conclusory assertion that John Kerr is a known robo signer is not entitled to any weight by the court….[T]he complaint does not plead facts sufficient to challenge the validity of the mortgage assignment.").

In their Opposition, plaintiffs insist that MERS lacked authority to assign the Deed of Trust. *See id.* at 3. Yet, that is not an allegation in the Complaint with respect to Count I. "'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101 (7th Cir. 1984); *accord Valderrama v. Honeywell Tech. Solutions, Inc.*, 473 F. Supp. 2d 658, 665 n.16 (D. Md. 2007). In any event, plaintiffs fail to set forth any basis for their assertion that MERS lacked authority to assign the Deed of Trust. In the absence of the appropriate "factual enhancement," *Iqbal*, 556 U.S. at 678, the court need not accept this conclusory allegation. Moreover, it is unclear how, if MERS did indeed assign the Deed of Trust without authority, that would, without more, constitute mortgage fraud under R.P. § 7-401(d)(6) and R.P. § 7-402, or implicate *defendants* in such a fraud.

Plaintiffs concede that their argument is unavailing as to the alleged failure to use an attorney to execute the Assignment of Deed of Trust. *See* Opposition at 3. They "[a]gree[] with

the defendants" as to "[f]aulty recordation of the Assignment," *id.*, citing page 9 of the Motion, which discusses execution by an attorney.

Moreover, the *absence* of a document from "the Land Records of Frederick County, Maryland, evidencing Fannie Mae to be a 'Secured 'Party,'" Complaint ¶ 23, cannot serve as the basis for a claim that defendants, "with the intent to defraud," *filed* or caused to be filed "any document relating to a mortgage loan…know[n] to contain a deliberate misstatement, misrepresentation, or omission." R.P. § 7-401(d)(6).

Particularly in light of the enhanced pleading requirements that apply to fraud claims, discussed *supra*, I cannot find that plaintiffs have presented a claim for mortgage fraud. Therefore, I shall dismiss Count One, without prejudice.

*Count Two*

In Count Two, titled "Declaratory Judgment," plaintiffs allege that "Fannie Mae has never been vested with any right, title or interest as a 'Secured Party' under and pursuant to the terms of the Deed of Trust," Complaint ¶ 27; that BANA acted "in direct violation of the HAMP Guidelines," *id.* ¶¶ 31-32; that defendants' actions "violate the doctrine of 'unclean hands,'" *id.* ¶ 33; that defendants "failed to engage in any effort to mitigate against losses suffered as a result of Plaintiff's default," *id.* ¶ 34; and that the Deed of Trust "should be returned [to them] as 'Paid.'" *Id.* ¶¶ 36-37. In light of these alleged wrongs, plaintiffs seek a declaratory judgment "[t]hat Fannie Mae/Bank of America is not authorized under the terms of the Deed of Trust to have any right to foreclose on the property" and "[t]hat there is no recorded document anywhere evidencing that Fannie Mae is a secured Party and ha[s] any right to foreclose." *Id.* at 7.

Defendants argue that "BANA, as servicer and assignee of the [Deed of Trust], may enforce the Note as an agent of the holder of the Note, Fannie Mae," and that "Fannie Mae is a

secured party through its relationship with BANA." Memo at 12.[8] Defendants also maintain that plaintiffs are not entitled to declaratory relief on the basis of a HAMP violation, as "plaintiffs have no express or implied private right of action under HAMP." *Id.* at 14. As to the assertions of "unclean hands" and failure to mitigate losses, defendants argue that these are "conclusory allegations" and that "Plaintiffs offer absolutely no facts to support these allegations and consequently fail to meet the *Twombly* pleading standard." *Id*. Defendants also reject the assertion that, "because the Note was sold from the original lender to Fannie Mae, it has been paid and should be returned to Plaintiffs marked 'paid.'" *Id*. They posit: "As it is a negotiable instrument, when [the note] was transferred to Fannie Mae, Fannie Mae received the right to enforce it and did not pay off the loan of Plaintiffs." *Id.* at 15.

In their Opposition, plaintiffs refer to defendants' argument regarding Fannie Mae's status as a secured party as "absurd." *Id.* at 4. With respect to "HAMP & Loan Modification," they assert: "Plaintiffs attempted to modify the loan with BANA since 2010 but all their efforts to get the modification resulted in NO response from BANA clearly evidencing that they have no authority whatsoever to modify the loan." *Id.* at 5. Plaintiffs do not address defendants' other arguments.

"[T]he granting of declaratory relief is entrusted to the discretion of the district court." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 209 (4th Cir. 2006) (citing 28 U.S.C. § 2201 ("any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration") (emphasis added)). "'In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial

---

[8] The Court need not resolve whether Fannie Mae obtains the status of a secured party merely through its relationship with BANA.

administration.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)).

I agree that plaintiffs cannot proceed on a cause of action grounded in a "violation" of HAMP. As Judge Blake has recognized, "numerous courts have held that borrowers do not have an express or implied private right of action under HAMP." *Allen, supra,* 2011 WL 3425665 at *4. *See also Acuna v. Chase Home Finance, LLC*, No. 10–CV–905, 2011 WL 1883089, *4 (E.D. Va. May 17, 2011) ("It is well-settled that borrowers do not have a private right of action under HAMP."). Accordingly, the Maheus cannot seek relief under a theory that BANA failed to grant a loan modification under HAMP. *See, e.g., Bourdelais v. J.P. Morgan Chase*, No. 10-CV-670, 2011 WL 1306311, *3 (E.D. Va. Apr. 1, 2011) ("Plaintiff is not the first federal-court claimant to assert entitlement to a permanent HAMP modification. These actions have taken a variety of forms based on different legal theories, none of which have fared well in the courts….Courts universally rejected [claims of entitlement to permanent modifications under HAMP itself] on the ground that HAMP does not create a private right of action for borrowers against lenders and servicers.").

Moreover, I agree with defendants that plaintiffs' allegations of "unclean hands" and failure to mitigate losses, asserted in paragraphs 33 and 34 of the Complaint, are insufficient to state a claim upon which relief can be granted. These "bare assertions" and "bald allegations" of misconduct are "conclusory and not entitled to be assumed true." *Iqbal, supra,* 556 U.S. at 681.

Nor is there merit to plaintiffs' suggestion that assignment, transfer, or sale of a promissory note by the original lender somehow relieves the borrower of any obligations under the promissory note. As defendants observe, "[t]he sale or transfer of a note from one lender to another does not affect payment from the borrower as such a notion would lead to the absurd

result that whenever a note is sold, the borrower would never have to pay a debt that he lawfully incurred." Memo at 16.

Therefore, the grounds articulated by plaintiffs do not warrant the issuance of a declaratory judgment announcing that defendants "have [no] right to foreclose on the [P]roperty" due to this alleged misconduct. Complaint at 7.[9] The Court also declines to consider plaintiffs' request for a declaration that "there is no recorded document anywhere evidencing that Fannie Mae is a Secured Party and ha[s] any right to foreclose." *Id.* Such a declaration is not supported by the Complaint. Moreover, the alleged absence of a recorded document does not necessarily bar Fannie Mae's right to foreclose on the Property. If or when a foreclosure action is commenced, the entity seeking to foreclose will have to establish its right to do so. Therefore, the request for declaratory relief in Count Two is dismissed, without prejudice.

*Count Three*

In Count Three, "Injunctive Relief," plaintiffs seek to enjoin defendants from foreclosing on the Property. *See* Complaint ¶ 44. They seek a temporary restraining order and preliminary and permanent injunctive relief. *See id.* ¶ 41.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008); *see also Munaf v. Geren,* 553 U.S. 674, 689-90 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. *See also Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011); *The Real Truth*

---

[9] The Court expresses no opinion on defendants' entitlement to foreclose. It merely asserts that the grounds advanced by plaintiffs do not warrant the requested declaratory relief.

*About Obama, Inc. v. Fed'l Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 130 S. Ct. 2371 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (*per curiam*). The standard for a permanent injunction is "essentially the same" as for a preliminary injunction, "with the exception that the plaintiff must show…actual success [on the merits]." *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).

Defendants argue that plaintiffs' request for injunctive relief "must fail for two reasons." Memo at 17. They explain, *id.*:

> First, they fail to demonstrate a likelihood of success on the merits….[N]one of Plaintiffs' claims have any merit whatsoever….Second, Plaintiffs fail to show that the issuing of an injunction would serve the public interest….In fact, the public interest likely cuts against Plaintiffs in this case as it is in the public interest that ones [sic] debts are paid.

In their Opposition, at 5, plaintiffs protest that, "[u]nless and until the evidence is presented to the Court that the Defendants are the Real Party in Interest and legally demonstrate their standing to proceed with the foreclosure, Plaintiffs be [sic] granted an injunctive relief."

As I see it, in the current posture of this case, plaintiffs cannot prevail on the merits: their claim of mortgage fraud has been dismissed, without prejudice. Nor can any of the alleged misconduct described in Count Two, couched as a claim for "Declaratory Judgment," serve as the basis of a viable claim going forward. Without a likelihood of success on the merits, plaintiffs are not entitled to a preliminary injunction. Therefore, the request for injunctive relief in Count Three is dismissed, without prejudice.

**Conclusion**

For the foregoing reasons, the Court will grant the motion to dismiss filed by defendants Bank of America, N.A. and the Federal National Mortgage Association. A separate Order follows.


Date: May 14, 2012                                        /s/
                                                          Ellen Lipton Hollander
                                                          United States District Judge